## LIM TUNG NOY v. NAGLE, Commissioner of Immigration.

Circuit Court of Appeals, Ninth Circuit.
January 30, 1929.

No. 5534.

Marshall B. Woodworth, of San Francisco, Cal., for appellant.

Geo. J. Hatfield, U. S. Atty., and George M. Naus, Asst. U. S. Atty., both of San Francisco, Cal., for appellee.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

DIETRICH, Circuit Judge. Lim Tung Noy, a Chinese woman, brought this proceed-

ing in habeas corpus to test the validity of an order of the Immigration Department denying her application to enter the United States. The court below dismissed her petition. Her claim of right to enter is based upon the contention that she is a foreign-born daughter of one Lim Go, who, it is conceded, is a native-born citizen of the United States and, at all times mentioned, a resident therein. She sought entry on June 2, 1927, at which time she was 22 years old. According to her testimony and that of her witnesses, Lim Go's family always resided in On Wah Lee Village, Sun Woey District, China, and she was born and continuously lived there up to the time she started for the United States. And it further appears that the language spoken by her alleged father and brothers and commonly used in that section of the country is what is referred to as the See Yip dialect of the Sun Woey or Sun Ning District, which is substantially different from the Cantonese dialect as spoken by the natives of Canton City.

Notwithstanding these facts, in her several examinations appellant uniformly gave her testimony in the Cantonese dialect, and in this circumstance the immigration officers found great, if not controlling, significance in rejecting her claim that she was born and reared in On Wah Lee Village. She makes no pretension that she ever had any opportunity to learn the Cantonese dialect prior to her coming to the United States; her only explanation being that she picked it up from attendants and others while she was in detention at San Francisco awaiting her hearing. It is true that she was so detained approximately four months, but, as bearing on that explanation, it is to be noted that in the record of a preliminary hearing held on July 15, 1927, less than six weeks after her arrival, there is a recital at the outset that applicant "speaks See Yip dialect of the Sun Ning District," but, at the close of a long examination extending over two days, there is a statement made by the interpreter in response to a question put to him by the inspector that "she has been testifying in the Cantonese dialect, purely." For reasons not presently material, further hearings were had in August and the latter part of September, the records of which hearings in September bear like notations. Upon the whole, the record discloses a disposition on the part of the board of special inquiry to give the applicant every reasonable opportunity to prove her relationship and to clear up apparent discrepancies.

Being impressed with the extraordinary circumstance that, though claiming to have always lived in a district, where only a certain dialect was spoken, and to be of a family the other members of which testified in that dialect, she chose to testify in another dialect within six weeks after she arrived at San Francisco, and uniformly persisted in so testifying, the board at the last hearing, on September 27th, put to her the direct question whether she wished to be understood as contending that, since her arrival, she had learned the Cantonese so well, and had conceived such an aversion to the See Yip dialect of the Sun Woey District, she chose to testify in Cantonese. To this question she replied in the affirmative, and further stated that she was aware that thus to use a dialect other than that of the home village of her family might, in the absence of satisfactory reasons, be deemed by the officers sufficient ground for the rejection of her application. And, in fact, she never offered to testify in the language of her alleged home village or to give any explanation of her conduct other than that she had learned the Cantonese while she was in detention. It is true that, after one of the later examinations, the interpreter stated that he noticed in her testimony a slight trace of the See Yip of the Sun Ning District dialect, and she also testified that she could speak that dialect. But these circumstances but little weaken the force of the underlying fact that from the beginning she persisted in testifying in Cantonese. If, as she claims, she was born in On Wah Lee Village, and lived there continuously up to the time she came to the United States, such conduct is unnatural and out of keeping with common experience. When on the witness stand, almost invariably a foreigner, though having a measure of familiarity with the English language, prefers, and reasonably prefers, to testify in his native tongue. If the applicant had used the See Yip dialect exclusively for 20 years, naturally she would have sought to express herself through that medium, and, in the absence of a reasonable explanation, her persistent use of a dialect claimed to have been hastily picked up was properly regarded as substantial evidence that her claim of relationship was fabricated. She offered no such explanation, and the ingenuity of counsel suggests none. Entertaining this view, we deem it unnecessary to discuss the numerous other discrepancies relied upon by the board of special inquiry.

Affirmed.