**FONG LOOK v. NAGLE, Commissioner of Immigration.**

No. 6217.

Circuit Court of Appeals, Ninth Circuit.

Dec. 1, 1930.

Stephen M. White, of San Francisco, Cal., for appellant.

Geo. J. Hatfield, U. S. Atty., and I. M. Peckham, Asst. U. S. Atty., both of San Francisco, Cal., for appellee.

· Before RUDKIN and WILBUR, Circuit Judges, and NORCROSS, District Judge.

WILBUR, Circuit Judge.

The appellant, having applied for entry into the United States, and the immigration authorities having denied his application and directed his return to China, applied to the District Court for the Northern District of California for a writ of habeas corpus, which was denied, and he takes this appeal from that order.

The petition of the appellant for the writ of habeas corpus in conformity with the rule of the District Court set forth in some detail the proceedings, the evidence, and the findings of the immigration authorities. The appellee filed a statement setting out additional excerpts from the testimony before the immigration authorities, and in reply the petitioner set out further excerpts. Upon the hearing of the application for the writ, apparently the entire record of proceedings before the immigration authorities was produced. That record has been sent to this court as a part of the record on appeal.

Appellant claims to be the Chinese-born son of a Chinese citizen of the United States. His application for admission was denied upon the ground that he had not satisfactorily established his American citizenship. The painstaking character of the investigation is indicated by a summary of the findings and decision of the Board of Special Inquiry and by the findings of the Board of Review in Washington, which were approved by the Secretary of Labor. After the conclusion of the hearing before the Board of Special Inquiry, appellant was given an opportunity to file a brief before the Board of Review. In this brief he discusses in detail the grounds upon which the Special Board made its rec-ommendations and presented his contentions in regard to the dialect spoken by the applicant. After presentation of this brief the Board of Review made its findings and recommended that the appeal from the order of the Special Board be dismissed. Thereupon the Secretary of Labor dismissed the appeal. We quote the findings of the Special Board to show the care with which the evidence was analyzed, the significance attached by that Board to various discrepancies in the testimony adduced by the appellant, and particularly to show the significance attached by the Board to the inability of the applicant to speak the dialect of the district wherein he claims to have been born. The findings of the Board are as follows:

"Summary.

"By Chairman:

"This applicant is applying for admission as the son of Fong Quong, whose status as a native of the United States has previously been conceded by this service. Our records show that a Fong Kuong arrived at this port on the steamship Rio de Janeiro, July 7, 1898, and while there are no papers on file regarding that landing which would definitely show the identity of the person landed, it has been conceded that that manifest record pertains to the arrival of the alleged father; some stenographic notes pertaining to the arrival of Fong Kuong in 1898 have been transcribed and show some testimony relating to Fong Kuong's family but contains no mention of his marital status. In 1914 the alleged father applied for and was granted a native's return certificate and at that time claimed to have three sons. giving for his second son the same name and birth date as is given for the present applicant. The alleged father has had two alleged sons admitted to the United States, Fong Fook in 1921, and Fong Shew in 1922; the latter died shortly after his admission here. The alleged father, Fong Quong, last departed from this country in December 23, 1922, and is said to have died in China in 1926; the only evidence presented to show his death are the statements of Fong Fook and the applicant, and there is nothing in our records to show that Fong Quong has ever identified this particular applicant as his son.

"The witnesses appearing for the applicant in the present case were Fong Fook, the alleged brother, and Fong Tuck, an identifying witness. There are a number of disagreements between the statements of the applicant and those of the witnesses and in addition

there is considerable difference between the story now told regarding the applicant's movements in China and that told about the second son of Fong Kuong in previous records.

"The applicant claims to have been born November 9, 1896, at the Chun Wah village, Heung Shan district, China, the birth date given being is prior to the date of the alleged father's first purported admission to the United States. Although the applicant claims to have been born in and to have resided continuously in the Heung Shan district until about 9 years ago, and to have a wife and children now living in that district, he is unable to speak the dialect of the district in which he claims to have been born. The particular section in which the applicant claims birth is known as the Wong Long Doo section of the Heung Shan district, and the dialect spoken there is very similar to that of the adjoining district of Sun Wuey. Each of the three interpreters who were used during the examination of the applicant unhesitatingly classified the dialect used by the applicant during the examination as the See Yip, Hoy Ping district, dialect; the applicant was advised during the course of his examination that if he failed to use the Wong Long Doo dialect in answering questions his failure to do so would be held against him in making a decision in this case, but in spite of this admonition, the applicant continued to use the Hoy Ping dialect, and when asked for an explanation why he had failed to use the dialect of the claimed native district he made the absurd statement that he had forgotten. The applicant was then given some reading matter and requested to read it. This matter was read by the applicant, but in spite of his statement that he would read it in the Wong Long Doo dialect he did not do so. The applicant was given every opportunity to demonstrate that he is familiar with the dialect of his claimed native district, but has clearly shown that he is unable to speak that dialect. The applicant gave as one reason for his speaking the See Yip dialect that he had been working in a store in Hongkong in which he was associated with See Yip people, and in that way had become accustomed to using the See Yip dialect; the applicant states that he was working at the Man Sin Wing store in Hongkong for about five years and the Yee Sang Yin store for about two years. The alleged brother, Fong Fook, and the identifying witness, Fong Tuck, both being Heung Shan people, state that they stopped at the Man Sin Wing store in Hong-

kong and this same store is given by the alleged father on his manifest record in 1915 as the address of a friend, these circumstances rather indicating that the place is frequented by Heung Shan people and tended to detract from the applicant's claim with having been associated with See Yip people in Hongkong. The fact that the applicant is able to speak the Hoy Ping district dialect is not in itself considered a detrimental feature to his claim, but that fact that he normally uses the See Yip dialect and is unable to use the dialect of his claimed native district is considered very detrimental to his claim of having been born in a Heung Shan district.'

"In 1921, when Fong Fook was admitted, he testified that his second brother, Fong Look, was then in Hongkong and had been there for many years (p. 5, S. F. file 27487/8—7); in 1922, when Fong Shew was admitted, he testified that his second brother, Fong Look, had been in Hongkong for a long time, placing the period of about 14 years (p. 7, S. F. file No. 21597/5—28); when Fong Quong, the alleged father, testified for Fong Shew in 1922, he testified that while he was in China in 1915 his son, Fong Look, was learning business in Hongkong (p. 2, S. F. No. 21597/5—28). Despite all this testimony in the previous records to show that Fong Look was in Hongkong for many years prior to 1921, both the applicant and his alleged brother, Fong Fook, testify at the present time that this applicant first went to Hongkong to work in 1921, the applicant specifically stating that he was never out of the home village to live or to work until 1921.

"Fong Fook testified in the present case that after the applicant quit school he immediately went to work farming in the home village and continued to do so for eight or ten years, stating that he and the applicant farmed some family land together. The applicant states that he had no occupation after he quit school for about six years except that he sometimes assisted his brother, Fong Fook, in farming, but states that he didn't farm regularly. In regard to his farming, Fong Fook states that they did not plow the land, but hoed it, while the applicant states that Fong Fook hired some unknown persons to plow the land with water buffalo.

"It is claimed that their home village consists of two houses only, one being the family home of the alleged father and the other one having been built in 1914 and now occupied by Fong Fook's and the applicant's families. Fong Fook describes both of these houses as being identical, having no skylights and

daylight entering through the open court, while the applicant states that there are skylights in the bedroom and kitchen in each house. Fong Fook also states that only one kitchen in the house which his family occupies has a stationary stove and that the other kitchen has never had a stove in it, but the applicant states that both kitchens have now a stationary stove and the house has the same number of stationary stoves now as it had when it was built. In the present case Fong Fook gives the name of his wife as Leung Shee and gives the same name for the wife of his third brother, Fong Shew, this being in agreement with all the testimony of the various persons testifying at the time of the landing of Fong Fook and Fong Shew. The applicant gives the name of Fong Fook's wife as Jeung Shee and gives the same name for the wife of Fong Shew; the applicant's pronunciation of these names Jeung Shee was carefully checked in order to make sure that there was no possibility of a confusion of names in the record.

"The applicant and Fong Fook disagree regarding the place where Fong Fook stopped while last in Hongkong en route to the United States. Fong Fook states that he last saw the applicant at the Yee Sang Yin store, Hongkong, where the applicant was employed, but that he himself did not stay at that store, but stayed at the Man Sin Wing store, while the applicant states that Fong Fook stayed at the Yee Sang Yin store, where he himself was working.

"The identifying witness, Fong Tuck, claims to have become acquainted with the applicant when he visited the applicant's home in 1905, staying at the applicant's home about half an hour at that time and that his only meetings with the applicant since 1905 were when he was in Hongkong en route to and from the United States. When Fong Tuck last returned to the United States in 1923, he was accompanied by an alleged son, Fong Fat Wing, and he testifies that while en route from his home with Fong Fat Wing he stopped at the store where the applicant was employed, in Hongkong; that Fong Fat Wing accompanied him on his arrival at that store and accompanied him away from that store. The applicant states that Fong Tuck stopped at the store in Hongkong where he himself was employed in 1923, while Fong Tuck was en route to the United States; that Fong Tuck arrived at that store alone; that he bade Fong Tuck good-bye when the latter was leaving the store, and that Fong Tuck left the store alone; states that he would know if Fong Tuck had a son with him at that time, and states that Fong Tuck did not have a son with him at that time, and also states that he does not know if Fong Tuck has any family. If Fong Tuck were actually well enough acquainted with this applicant to be able to testify, it is only reasonable to suppose that the applicant would know of Fong Tuck's having a son who stopped at the applicant's store with Fong Tuck.

"In view of the disagreements between the statements of the applicant and those of the witnesses, the disagreements between the testimony given in the present case and that given in the former cases of members of Fong Quong's family and the applicant's inability to speak the dialect of his claimed native district, I am of the opinion that the evidence submitted has not satisfactorily established that the applicant is an alleged son of Fong Kuong, as claimed, and for that reason I move that he be denied admission to the United States, as well as for the reason that the burden of proof has not been sustained as required by section 23 of the Immigration Act of 1924 (8 USCA § 221).

"Member McNamarra: I second the motion.

"Member Hecht: I concur."

After this decision the matter of dialect was argued by the appellant in his brief before the Board of Review. Upon that subject his brief is as follows:

"The present applicant is the second son of Fong Quong and claims to have been born in China, November 9, 1886. He was excluded by a board of special inquiry on the ground that the claimed relationship was not satisfactorily established, the excluding decision being based on alleged discrepancies in the testimony and on the ground that the applicant is said to speak a different dialect from that of his father and brothers.

### "Dialect Spoken by Applicant.

"1. The chairman states that although the applicant claims to have been born in and to have resided in the Heung Shan district until about nine years ago, he is unable to speak the dialect of that district. As a matter of fact, the interpreters used in the examination of the applicant were merely making a guess concerning this matter. These interpreters have frequently in the past shown that they are wholly unable to determine the dialect spoken by an applicant where the dialect used was merely a sub-dialect of one of the general dialects. The applicant claims

to have been born in the Wong Lung Doo section of the Heung Shan district., This section lies between the Heung Shan district and the Sun Wuey district, and it is said to have at one time belonged to the latter district, and the See Yip dialect is used therein by most of the inhabitants. The interpreters used in the examination state that the applicant speaks the See Yip dialect of the Hoy Ping district. Properly speaking, there is no such thing as 'See Yip' dialect. This term simply means 'four districts'—Sun Wuey, Poi San (formerly Sun Ning), Yin Ping and Hoy Ping districts—in which the dialects are quite similar, and the dialects spoken in these four districts have been arbitrarily designated 'See Yip.' These four districts, including the Wong Lung Doo section, adjoin each other, and the inhabitants of these four districts generally speak the so-called 'See Yip' dialect. The applicant in this case claims that he speaks the See Yip dialect of Sun Wuey district, but the interpreters claim to be of the opinion that he speaks the See Yip dialect of Hoy Ping district. It has been repeatedly shown in cases of this kind that the interpreters are unable to determine whether or not an applicant speaks any one of the several general dialects, and if they cannot distinguish between the general dialects they are certainly not qualified to distinguish a sub-dialect. In the case of Louie Kum Shing (55245/341) the port officials excluded the applicant on the ground that she spoke a different dialect from her alleged father. Six interpreters were asked to give an opinion as to her dialect, and there were no two of them in complete agreement, and a radical disagreement between some of them. The appeal was sustained. In the case of Fong Heuey (55245/981) the interpreters were unable to agree as to whether or not the applicant spoke the See Yip dialect of Sun Ning district or Hoy Ping district. In the case of Lee Yin (55392/164) five interpreters were more or less in disagreement concerning the dialect spoken by the applicant, but generally agreed that he used a Hock Gar dialect or accent, whereas the applicant claimed that he spoke the Sam Yup, which is an entirely different general dialect. The appeal was sustained. In the case of Lee Yep Theu (55392/576) the interpreters could not agree as to whether or not the applicant spoke the See Yip, Sam Yup or Cantonese dialect. The Sam Yup and See Yip are two distinctive general dialects. Some of the interpreters used in the above-mentioned case were the same ones who expressed an opinion in the pending case, and if they were unable to distinguish between the Hock Gar and Sam Yup and between the Sam Yup and See Yip, they are certainly not qualified to give an opinion as to one of the four sub-dialects of the See Yip dialect.

"There is no evidence in this record to show that this applicant speaks a different dialect from that of his father. and prior-landed brother. The father of this applicant was recorded as speaking the Heung Shan dialect in the preliminary statement, prior to the taking of his testimony, probably because he lived in said district, but he testified that he spoke the See Yip dialect (which is the same dialect the present applicant claims to speak), and Interpreter B. C. Hock, when asked as to the dialect which the father spoke, said he speaks 'See Yip dialect, but it is very similar to Heung Shan,' and Interpreter C. Rickards stated that the applicant's prior-landed brother, Fook, spoke the See Yip dialect (S. F. 27487/8—7). While three interpreters were requested to express an opinion as to this applicant's dialect, they were not requested to give an opinion as to the dialect spoken by the applicant's prior-landed brother, and, so far as the record shows, they may speak the identical sub-dialect.

"A number of circumstances may be responsible for the dialect spoken by an applicant. For instance, he lived near the border line, where two different general dialects are intermixed and mingled to such an extent that it may be different from the dialect used in any other locality. In the second place, a person's associations will have a great deal to do with his dialect. In this case the applicant has been living in Hongkong for the past nine years or longer, and has associated almost exclusively with people speaking the See Yip dialect, but it is not shown whether they were of the Sun Wuey or Hoy Ping branches of the See Yip dialect. In the third place, it is not shown what dialect the applicant's mother spoke, and a child will be more likely to speak the dialect of his mother than of his father. In the fourth place, it is not shown what dialect the applicant's wife speaks, and the husband would naturally drift into the dialect spoken by his wife and children. In view of the foregoing matters, and the failure of the examining inspector to develop some essential details, the question of the applicant's dialect is frivolous and should not be given the slightest consideration in determining the question of his relationship."

We also quote the findings of the Board of Review, to show that the contentions of

the appellant in his brief before the board were given careful consideration, as follows:

"San Francisco, April 14, 1930.

"In re Fong Look.

"This case comes before the board of review on appeal from a decision of a board of special inquiry at San Francisco denying admission as the son of a native citizen of the United States. The nativity and citizenship of the alleged father being conceded, the question at issue is relationship.

"Attorney George W. Hott has filed a brief. Attorney Dion R. Holm at the port.

"The record shows that the alleged father departed from the United States in 1922, and he is said to have died in China in 1926. An alleged brother, Fong Fook, was admitted in 1921. He has since made one trip to China, departing in 1926 and returning in December, 1928. Another alleged brother, Fong Sew, was admitted in 1922 and died shortly after his admission. The alleged brother, Fong Fook, and an alleged acquaintance, Fong Tuck, appeared to testify on the applicant's behalf. The record discloses serious disagreements in the testimony and a no less serious difference in the dialect spoken, on the one hand, by the applicant, and, on the other, by the witnesses, as well as by the alleged father and deceased alleged brother, as shown in the latter's records.

"The applicant claims to have been born in the Heung Shan district in 1896 and to have remained in his home village until nine years ago, and during the latter period to have returned frequently to that village to visit his family and to worship at the graves of his ancestors, but each of the three interpreters who served in this case testifies that the applicant does not speak the Heung Shan dialect as spoken in the Wong Long Doo section, but speaks the evidently quite different See Yip dialect as spoken in the Hoy Ping district. The record shows that the alleged father and both of the prior-landed alleged brothers of the applicant, as well as the applicant's identifying witness in this case speak the Heung Shan dialect as spoken in the Wong Long Doo section. In consideration of the fact that the applicant claims to have worked during the past nine years in Hongkong, and so might have learned to speak See Yip, the chairman of the board at the port carried the investigation regarding the matter of dialect farther than it is usually carried in these cases. He warned the applicant that if he did not speak the dialect appropriate to the district from which he claimed to have come, his failure to do so would be considered as adverse to his claim to be the son of his alleged father, and produced a convincingly complete demonstration that this applicant not only does not usually speak the dialect which, according to the record, the other members of his alleged family speak, but is unable to speak that dialect. A person entirely unfamiliar with the dialects spoken by the applicant, on the one hand, and his witnesses, on the other, may note a difference between his pronunciation of names and that of his witnesses as these are phonetically reported in the record. Where there is disagreement among the interpreters regarding differences of dialect, the adverse weight of alleged differences is lessened. In this case there is complete agreement between the several interpreters, and this feature must be regarded as weighing heavily against the validity of this applicant's claim to be a member of his alleged family and the son of his alleged father.

"The applicant testifies that he went to Hongkong to work in 1921 and that he never left his home village to live or to work before 1921. His alleged brother, Fong Fook, on the other hand, testified in 1921 that his brother, who this applicant claims to be, had at that time been in Hongkong for many years. In 1922, when this applicant's alleged brother, Fong Sew, was an applicant for admission, his alleged father testified that his son, who this applicant claims to be, was employed in Hongkong as early as 1915. The fact that Fong Fook now contradicts his own previous testimony, as well as that of his alleged father, and agrees with the applicant that the latter first went to Hongkong in 1921, seems rather to injure Fong Fook's credibility than to strengthen the applicant's case.

"The applicant testifies that for about six years after he quit school he had no occupation, but says that he just occasionally assisted his brother, Fong Fook, in farming. Fong Fook, on the other hand, testifies that his brother, who the applicant claims to be, and his deceased brother engaged together in farming. Their descriptions of the farming show a clear-cut contradiction. The applicant testifies that the land on which they worked was plowed by hired water buffalos. Fong Fook states that this land was not plowed, but merely cultivated with hoes.

"The applicant testifies that the bedrooms and kitchens of each of the two houses in the home village are lighted and have always been lighted through the roof by skylights,

and that each of the two kitchens in Fong Fook's house has, and since the house was built has had, a stationary stove. Fong Fook, on the other hand, testifies that the bedrooms and kitchens of those two houses have no skylights, and that daylight enters from the open court; also that in his house there is a stationary stove in only one of the two kitchens.

"Whether the difference between the names of the wives of his two alleged brothers as the applicant gives them and as Fong Fook gives them is due to a difference of dialect or not, it appears to be such a difference as to make this applicant's claim untenable. The applicant says that the name of the wife of each of his prior-landed alleged brothers is Jeung Shee. His alleged brother, Fong Fook, gives the name of each of those women as Leung Shee.

"The applicant testified that his brother, Fong Fook, when stopping over in Hongkong on his way to the United States in 1928, stayed at the Yee San Yin store, where he was employed. Fong Fook testifies that he stayed not in the store in which his brother was employed, but at the Man Sin Wing store.

"As to the support to the applicant's claim which the identifying witness, Fong Tuck, brings, one would have to assume that both he and the applicant have extraordinary memories in order to give full value to their testimony regarding the details of their meeting twenty-five years ago, when the applicant was a child. Moreover, their testimony presents a disagreement which seems to make practically worthless the attempted support of this witness to the applicant's claim. The applicant states that Fong Tuck came alone to see him in Hongkong; that Fong Tuck was alone when he greeted him; that Fong Tuck bade him good-bye and departed from the store in which the applicant was working, and that no one was accompanying Fong Tuck when he departed. Fong Tuck, on the other hand, testifies that he had his son with him when he entered that store; that his son was with him when he greeted the applicant; that he did not say good-bye to the applicant, but that the applicant saw him departing in company with his son when he came away.

"The record shows that in 1914 the alleged father of this applicant gave the name which this applicant gives as that of one of his sons, but the evidence presented in this case makes it unreasonable to hold that this applicant is the son claimed at that time by the alleged father, or is, in fact, a member of his alleged father's immediate family."

The matter of dialect in connection with the admission of an applicant for entry into the United States was discussed in this court in the case of Lim Tung Noy v. Nagle, 30 F.(2d) 650, and also in the case of Nagle v. Jin Suey, 41 F.(2d) 522. While the casual use of a dialect by a Chinese witness who has lived in different districts using different dialects might not have determinative weight, it is evident that the inability to speak or understand the dialect of any district in which he claims to have lived is very substantial evidence that he never lived in that district. Where his attention is challenged to the significance of the dialect he uses in connection with his claim of citizenship, and, with full knowledge of the possible consequences of his ignorance, he is nevertheless unable to show a familiarity with the dialect of the district which could be reasonably attributed to a Chinaman living therein, such inability is so significant that it cannot be held that a rejection of his claim of citizenship based upon such discrepancy is unfair or unreasonable. This test is one of the oldest known. Judges xii: 4-6.

Order affirmed.